ADMIN,APPEAL,CLOSED

# U.S. District Court
## District of New Hampshire (Concord)
## CIVIL DOCKET FOR CASE #: <u>1:16−cv−00108−PB</u>

Biron v. USA
Assigned to: Judge Paul J. Barbadoro
Related Case:  1:12−cr−00140−PB−1
Case in other court:  First Circuit Court of Appeals, 18−01996
　　　　　　　　　　First Circuit Court of Appeals, 18−02226
Cause: 28:2255 Motion to Vacate / Correct Illegal Sentence

Date Filed: 03/23/2016
Date Terminated: 10/02/2017
Jury Demand: None
Nature of Suit: 510 Prisoner: Vacate Sentence
Jurisdiction: U.S. Government Defendant

**Petitioner**

**Lisa Biron**

represented by **Lisa Biron**
12775−049
Waseca − FCI
Inmate Mail/Parcels
PO Box 1731
Waseca, MN 56093
PRO SE

**Charles J. Keefe**
Wilson Bush & Keefe PC
378 Main St
Nashua, NH 03060
603 595−0007
Fax: 603 595−0070
Email: keefe@wbdklaw.com
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**USA**

represented by **Seth R. Aframe**
US Attorney's Office (NH)
James C Cleveland Federal Bldg
53 Pleasant St, 4th Flr
Concord, NH 03301
603 230−2532
Email: seth.aframe@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 03/23/2016 | <u>1</u> | | MOTION TO VACATE SENTENCE 28:2255. See also Criminal Case No. 12−cr−140−01−PB. filed by Lisa Biron. (Attachments: # <u>1</u> Memorandum of Law, # <u>2</u> Civil Cover Sheet)(Keefe, Charles) (Entered: 03/23/2016) |

| 03/23/2016 | 2 | | Assented to MOTION to Stay *Proceedings Pursuant to a Motion Under 28 U.S.C. Section 2255* filed by Lisa Biron.(Keefe, Charles) (Entered: 03/23/2016) |
|---|---|---|---|
| 03/23/2016 | | | NOTICE of Filing – Case filed under 28 U.S.C. 2255. A copy of the petition has been electronically sent via ECF to your office. No further action is required by the United States Attorney unless directed by the presiding judge.(lml) (Entered: 03/23/2016) |
| 03/23/2016 | | | Case assigned to Judge Paul J. Barbadoro. The case designation is: 1:16–cv–108–PB. Please show this number with the judge designation on all future pleadings. (lml) (Entered: 03/23/2016) |
| 03/23/2016 | | | NOTICE. This case has been designated for Electronic Case Filing. All further submissions shall be filed in compliance with the Administrative Procedures for Electronic Case Filing. Pro se litigants are not required to file electronically and may continue to file documents in paper format. Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE.(lml) (Entered: 03/23/2016) |
| 03/23/2016 | | | **ENDORSED ORDER granting 2 Motion to Stay. *Text of Order: Granted.* So Ordered by Judge Paul J. Barbadoro. Status Report due by 7/21/2016.(vln)** (Entered: 03/23/2016) |
| 03/24/2016 | 3 | | NOTICE of Attorney Appearance by Seth R. Aframe on behalf of USA Attorney Seth R. Aframe added to party USA(pty:res).(Aframe, Seth) (Entered: 03/24/2016) |
| 06/08/2016 | 4 | | Assented to MOTION to Stay *(to Extend Stay)* filed by Lisa Biron.(Keefe, Charles) (Entered: 06/08/2016) |
| 06/10/2016 | | | **ENDORSED ORDER granting 4 Motion to Stay. *Text of Order: Granted. No further continuances.* So Ordered by Judge Paul J. Barbadoro. Status Report due by 12/8/2016.(vln)** (Entered: 06/10/2016) |
| 12/08/2016 | 5 | | STATUS REPORT by Lisa Biron : stayed(Keefe, Charles) (Entered: 12/08/2016) |
| 12/09/2016 | | | **ENDORSED ORDER 5 Status Report. *Text of Order: The case shall be stayed until no later than January 15th. The court is not inclined to grant further stays.* So Ordered by Judge Paul J. Barbadoro.(vln)** (Entered: 12/09/2016) |
| 01/23/2017 | | | **ENDORSED ORDER re: 1 Motion to Vacate Sentence 2255. *Text of Order: The government shall respond within 30 days.* So Ordered by Judge Paul J. Barbadoro.(vln)** (Entered: 01/23/2017) |
| 03/09/2017 | 6 | | MOTION to Extend Time to Answer to April 9, 2017 filed by USA. Follow up on Objection on 3/23/2017. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Aframe, Seth) (Entered: 03/09/2017) |
| 03/22/2017 | 7 | | RESPONSE to Motion re 1 Motion to Vacate Sentence 2255 – New Case filed by USA. (Aframe, Seth) (Entered: 03/22/2017) |
| 03/24/2017 | | | |

| | | | |
|---|---|---|---|
| | | | **ENDORSED ORDER granting 6 Motion to Extend Time to Answer to April 9, 2017 re 1 Motion to Vacate Sentence 2255 – New Case. *Text of Order: Granted.* So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 03/24/2017) |
| 05/09/2017 | 8 | | RESPONSE re 7 Response to Motion, 1 Motion to Vacate Sentence 2255 – New Case filed by Lisa Biron. (Keefe, Charles) (Entered: 05/09/2017) |
| 10/02/2017 | 9 | 6 | **///ORDER DENYING 1 Motion to Vacate Sentence 2255. The clerk of court shall enter judgment accordingly and close this case. So Ordered by Judge Paul J. Barbadoro.(vln)** (Entered: 10/02/2017) |
| 10/02/2017 | 10 | | **JUDGMENT is hereby entered in accordance with 9 Order on Motion to Vacate Sentence under 28 USC 2255. Signed by Daniel J. Lynch, Clerk of Court. *(Case Closed)* (vln)** (Entered: 10/03/2017) |
| 11/27/2017 | 11 | | MOTION for relief from judgment under Rule 60(b), filed by Lisa Biron.(vln) (Entered: 11/27/2017) |
| 11/27/2017 | 12 | | **ORDER denying without prejudice 11 Motion for relief under Fed. R. Civ. P. 60(b). So Ordered by Judge Paul J. Barbadoro.(vln)** (Entered: 11/27/2017) |
| 03/12/2018 | 13 | | NOTICE of Change of Address BY Lisa Biron(vln) (Entered: 03/15/2018) |
| 04/05/2018 | 14 | | Addendum to 1 Motion to Vacate Sentence 2255 – New Case by Lisa Biron. (vln) (Entered: 04/11/2018) |
| 07/02/2018 | 15 | | MOTION Relief from Judgment Under Rule 60(b) filed by Lisa Biron. Follow up on Objection on 7/16/2018. (vln) (Entered: 07/03/2018) |
| 07/17/2018 | | | **ENDORSED ORDER denying 15 Motion for Relief from Judgment Under Rule 60(b). *Text of Order: The motion is denied for the reasons set forth in the government's objection.* So Ordered by Judge Paul J. Barbadoro.(vln)** (Entered: 07/17/2018) |
| 10/09/2018 | 16 | | NOTICE OF APPEAL as to 9 Order on Motion to Vacate Sentence under 28 USC 2255, 10 Judgment by Lisa Biron. UNPAID Filing fee $ 505. File–stamped copy to be sent to parties/USCA by Clerks Office. **NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf/. Counsel and pro se parties should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at  http://www.ca1.uscourts.gov/cmecf**(vln) (Entered: 10/11/2018) |
| 10/09/2018 | 17 | | MOTION to Extend Time to File an Appeal filed by Lisa Biron. Follow up on Objection on 10/23/2018. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(vln) (Entered: 10/11/2018) |
| 10/11/2018 | 18 | | Appeal Cover Sheet as to 16 Notice of Appeal, filed by Lisa Biron (vln) (Entered: 10/11/2018) |
| 10/11/2018 | 19 | | Clerk's Certificate transmitting Record on Appeal to US Court of Appeals, documents numbered 9,10,16,18,19, re 16 Notice of Appeal. A copy of the |

| | | | |
|---|---|---|---|
| | | | Notice of Appeal mailed to all parties this date.(vln) (Entered: 10/11/2018) |
| 10/15/2018 | | | Appellate Case Number: First Circuit Court of Appeals No. 18−1996 re <u>16</u> Notice of Appeal(vln) (Entered: 10/15/2018) |
| 10/25/2018 | | | **ENDORSED ORDER taking under advisement <u>17</u> Motion to Extend Time to File an Appeal. *Text of Order: The government shall respond to the motion within 14 days.* So Ordered by Judge Paul J. Barbadoro.(vln)** (Entered: 10/25/2018) |
| 11/28/2018 | <u>20</u> | | RESPONSE to Motion re <u>17</u> MOTION to Extend Time to File an Appeal filed by USA. (Aframe, Seth) (Entered: 11/28/2018) |
| 11/29/2018 | | | **ENDORSED ORDER denying <u>17</u> Motion to Extend Time to file an appeal. *Text of Order: I deny the motion for the reasons set forth in the government's response.* So Ordered by Judge Paul J. Barbadoro.(vln)** (Entered: 11/29/2018) |
| 12/03/2018 | <u>21</u> | | Letter to Clerk of Court from Lisa Biron re Motion to Extend Time to File an Appeal. (vln) (Entered: 12/04/2018) |
| 12/10/2018 | <u>22</u> | | MOTION to Strike <u>20</u> Response to Motion filed by Lisa Biron. Follow up on Objection on 12/24/2018. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(vln) (Entered: 12/11/2018) |
| 12/10/2018 | <u>23</u> | | NOTICE OF APPEAL as to Order on Motion to Extend Time by Lisa Biron. Filing fee $ 505, UNPAID. File−stamped copy to be sent to parties/USCA by Clerks Office. <br><br> **NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at <u>http://pacer.psc.uscourts.gov/cmecf/</u>. Counsel and pro se parties should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at  <u>http://www.ca1.uscourts.gov/cmecf</u>**(vln) (Entered: 12/11/2018) |
| 12/11/2018 | <u>24</u> | | Appeal Cover Sheet as to <u>23</u> Notice of Appeal, filed by Lisa Biron (vln) (Entered: 12/11/2018) |
| 12/11/2018 | <u>25</u> | | Clerk's Certificate transmitting Record on Appeal to US Court of Appeals re <u>23</u> Notice of Appeal. A copy of the Notice of Appeal mailed to all parties this date.(vln) (Entered: 12/11/2018) |
| 12/11/2018 | | | Appellate Case Number: First Circuit Court of Appeals 18−2226 re <u>23</u> Notice of Appeal, filed by Lisa Biron.(vln) (Entered: 12/11/2018) |
| 01/02/2019 | | | **ENDORSED ORDER denying <u>22</u> Motion to Strike. *Text of Order: Denied.* So Ordered by Judge Paul J. Barbadoro.(vln)** (Entered: 01/03/2019) |
| 02/08/2019 | <u>26</u> | 5 | Clerk's Supplemental Certificate transmitted to US Court of Appeals re <u>23</u> Notice of Appeal.(vln) (Entered: 02/08/2019) |

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Lisa Biron


     v.                                    No. 16-cv-108-PB


United States of America


SUPPLEMENTAL CLERK'S CERTIFICATE TO
CIRCUIT COURT OF APPEALS


    I, Vincent Negron, Deputy Clerk of the United States District
Court for the District of New Hampshire, do hereby certify that the
following document constitutes the supplemental record on appeal to
the First Circuit Court of Appeals:

    DOCUMENT NUMBERED: [9] Order denying Petitioner's Motion to
    Vacate AND declining to issue **CERTIFICATE OF APPEALABILITY**, dated
    October 2, 2017.

    The Clerk's Office hereby certifies the record and docket sheet
available through ECF to be the certified Supplemental Record and the
certified copy of the docket entries.


                              IN TESTIMONY WHEREOF, I hereunto
                              set my hand and affix the seal
                              of said Court, at Concord, in
                              said District, on this day,


                              **FCP IGN'L0N[ PEJ , Clerk**


                              **By: /s/ Vincent Negron, Deputy Clerk**
                              **Feb 08, 2019**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>**Lisa Biron**</u>

v.                                    Case No. 16-cv-108-PB
                                      Opinion No. 2017 DNH 211

<u>**United States of America**</u>

<u>**MEMORANDUM AND ORDER**</u>

Lisa Biron was convicted in this court of transporting a
minor with intent to engage in criminal sexual activity, sexual
exploitation of children, and possession of child pornography.
The sole victim of her underlying crimes was Biron's 14 year-old
daughter.  Biron was subsequently sentenced to 480 months in
prison.  She now moves to vacate her sentence pursuant to 28
U.S.C. § 2255, claiming ineffective assistance of counsel.  For
the reasons that follow, I deny Biron's motion.[1]

I.   <u>**BACKGROUND**</u>

On January 3, 2013, a federal grand jury returned an eight-
count superseding indictment against Biron.  The indictment
charged Biron with one count of transportation of a minor with
intent to engage in criminal sexual activity in violation of 18

---

[1] In this Memorandum and Order, "Doc. No." citations indicate
document numbers in this proceeding's docket.  "Trial Doc. No."
citations, however, indicate document numbers in the docket of
the underlying criminal proceedings against Biron, <u>United States
v. Biron</u>, No. 12-CR-140-PB.

U.S.C. § 2423(a) (Count 1); six counts of sexual exploitation of
children in violation of 18 U.S.C. § 2251(a) (Counts 2-7); and
one count of possession of child pornography in violation of 18
U.S.C. § 2252A(a)(5)(B) (Count 8).  The charges were based on
several videos and one photograph recovered from Biron's
computer that depict R.B. while engaged in sexually explicit
conduct with either Biron or one of two young men: Kevin Watson
or Brandon Ore.

## A.    <u>Kevin Watson – Counts One through Five</u>

The events giving rise to Counts One through Five took
place during a trip to Canada in May 2012, where Biron and R.B.
spent the weekend with Kevin Watson.[2]   Watson was then a
nineteen year-old Canadian national, whom R.B. and Biron
initially encountered on the internet.  Initially, both Biron
and R.B. engaged in sexual activity with Watson over the
internet on a daily basis, through the use of webcams.  Later,
Biron arranged for the three of them to meet in person at a
hotel in Niagara Falls, Ontario, so that both Biron and R.B
could have sex with Watson.  At trial, Watson testified that
Biron had told him prior to the meeting that they "could make a

---

[2] Unless otherwise indicated, all facts hereinafter are taken
from evidence introduced on days two and three of Biron's jury
trial for the underlying criminal proceedings, which took place
on January 9, 2013 and January 10, 2013.  <u>See</u> Transcript of
Proceedings <u>Biron</u>, No. 12-CR-140-PB (D.N.H. Sept. 13, 2013)
(Trial Doc. Nos. 52, 53).

porno" once in Niagara Falls.  <u>See</u> Trial Doc. No. 52 at 58-59,
16-25; 59, 1.[3]

On May 25, 2012, Biron flew to Buffalo with R.B., rented a
car, and drove to Canada to pick up Watson at his mother's
house.  Biron then drove Watson and R.B. to a hotel in Niagara
Falls, Ontario, where the three would stay together in a room
through Monday, May 28, 2012.  Once in their hotel room, they
began to drink alcohol and smoke marijuana.  Soon thereafter at
Biron's insistence, Watson had sex with R.B. and Biron proceeded
to film it.  Over the next four days, Watson and R.B. had sex on
several more occasions, and Biron again captured their activity
on video at least twice.  Those video recordings were later
recovered from Biron's computer during the government's
investigation.  The government also recovered a digital
photograph from Biron's computer that depicted Biron and R.B. in
bed with Watson while positioned around Watson's nude, erect
penis.

At trial, the three videos and the photograph were shown to
the jury and authenticated by Watson.  The three videos clearly
depict Watson and R.B. engaged in sexual intercourse, and Biron
can be heard commenting and laughing throughout two of them.
Biron's trip to Canada served as the basis for Count One,

---

[3] Citations to the trial transcript are in the following format.
Doc. No. [number] at [page], [line].

3

transportation with intent to engage in criminal sexual
activity.  The theory on which Biron was convicted on that count
was that the purpose of the trip to Canada was to produce child
pornography.  The three videos of Watson and R.B. served as the
primary support for Counts Two through Four.  The photograph of
Watson, R.B. and Biron in bed served as the basis for Count
Five.

The government presented several other witnesses in
addition to Watson to support its contention that Biron intended
to produce child pornography.  Among the government's witnesses
were Robert Hardy, Brandon Ore, and Lisa Brien, who were all
former friends or acquaintances of Biron.  All three testified
as to instances in which Biron discussed with them her own plan
to film R.B.'s first time having sex.[4]  All of their discussions
occurred after Biron and R.B.'s trip to Canada, and both Hardy
and Ore testified that the discussions took place while viewing
one of the videos of R.B. and Watson having sex.

## B.    **Brandon Ore – Count Six**

The events giving rise to Count Six took place during the
summer of 2012, at the Biron residence in Manchester, NH.  They
involved eighteen year-old Brandon Ore.  At trial, Ore testified

---

[4] See Trial Doc. No. 52, at 139, 19 -142 (Brandon Ore); 187, 3-22
(Robert Hardy); 208, 5-25; 209, 16-21 (Lisa Brien).

that he first became acquainted with Biron in July 2012 after responding to a Craigslist advertisement that Biron had posted. According to Ore, the advertisement read: "two girls looking to party, 18, 33." See Trial Doc. No. 52, at 122, 1-2. After exchanging several emails, Ore and Biron met at Biron's home and had sex. Upon leaving the next morning, Ore was told by Biron to come back sometime and bring a friend.

A few days later, Ore returned with a male friend. The two were greeted by Biron and introduced to R.B., who Biron identified as her roommate. That night, Ore had sex with R.B., and Biron had sex with Ore's friend. This arrangement was repeated over the next few weeks on five or six occasions. Eventually, Ore moved in with Biron and R.B., and began dating R.B.

Ore further testified that Biron was supportive of his sexual relationship with R.B. during this time, and even "encouraged" it. On one particular occasion, as he recounted at trial, Biron "suggested" that R.B. and Ore have sex on the living-room couch in front of Biron. R.B. and Ore agreed, and Biron proceeded to film the two with her iPhone. At trial, the video was played for the jury, and it clearly depicted Ore and R.B having sex. Biron can be heard in the background conversing with Ore. Both the video and Ore's testimony served as the

basis for Count Six, which charged Biron with sexual

exploitation of R.B.

## C.    Biron – Counts Seven and Eight

Count Seven was based on a video depicting Biron performing

oral sex on R.B. and Count Eight was based on Biron's possession

of the previously mentioned videos and photograph.

The events giving rise to Count Seven took place in Biron's

own living room on May 18, 2012.  At trial, portions of the

video were played for several witnesses for authentication

purposes, and then showed to the jury.  The video began with a

shot of an empty living room, and eventually two female voices

could be heard in the background.  Michael Biron, who is R.B.'s

father and Lisa Biron's estranged husband, first identified the

two female voices in the video as belonging to his ex-wife and

his daughter.  He then identified the setting depicted in the

video as being the Biron residence in Manchester, NH.  The video

was then played for the jury, and depicted one female performing

digital penetration and then oral sex on the other in the

setting first identified by Michael Biron as Biron's home.  The

government presented additional evidence to identify Biron as

the female performing the oral sex, and R.B as the female

receiving it.

Furthermore, Jim Scripture, a forensic computer examiner

with the F.B.I., testified that he extracted this video from an

6

iPhone backup folder located on Biron's computer.  By reading
the data associated with the file, Scripture testified, he was
able to determine that the video was filmed with an iPhone, on
May 18, 2012, at Biron's address in Manchester, NH.

**D.    Biron's Defense**

Attorney James Moir represented Biron at trial.  Biron's
defense to Count One, the transportation charge, was that she
lacked the required criminal intent.  Moir argued that the
government had failed to prove that Biron traveled to Canada for
the purpose of creating child pornography.  He argued that the
video recordings of R.B. were merely incidental to the trip,
rather than its object, and they were the product of an
impulsive act rather than a preconceived plan.  See Trial Doc.
No. 53 at 61, 4-15; 66, 8-11.  In supporting his argument, Moir
addressed the testimony of Ore, Watson, Hardy, and Brien, all of
whom had apparently testified to Biron's alleged plan to film
R.B. having sex in Canada.  Moir attacked the credibility of
each witness in turn, and argued that there was a lack of any
clear-cut evidence of Biron's criminal purpose in traveling to
Canada.

For example, with respect to Kevin Watson, Moir argued in
his closing argument that Watson had a motive to provide
favorable testimony to the government so to mitigate his own
criminal liability.  He emphasized the fact that the first time

Watson had mentioned Biron's plan to "make a porno" to anyone was a few days before trial during an interview with assistant U.S. Attorneys, despite being interviewed extensively by Canadian authorities beforehand.  See Trial Doc. No. 53 at 63, 9-25, 64, 1-6.  Similarly, with respect to Lisa Brien and Brandon Ore, Moir emphasized that neither had actually said that Biron told them the reason she went to Canada was to make the videos of R.B.  See Trial Doc. No. 53 at 62, 22-25; 63; 1-3.

Likewise, Biron's defense to Counts Two through Seven was that the government had not met its burden of proof.  Moir argued that Biron did not "cause" or induce R.B. to engage in the sexual conduct captured on video, as required by statute, but rather R.B. engaged in it voluntarily.  See Trial Doc. No. 53 at 67, 15-17; 68, 11-23.  Biron did not mount a specific defense to Count Eight, the possession of child pornography charge.

**E.    Procedural History**

On January 10, 2013, a jury convicted Biron on all charges after a three-day trial.  Following her sentencing in May 2013, Biron appealed to the First Circuit, which rejected her arguments and affirmed her conviction in November 2014.  On March 23, 2015, the U.S. Supreme Court denied Biron's petition for certiorari.  Biron v. United States, 135 S.Ct. 1576 (Mem) (2016).

On March 23, 2016, Biron filed the instant motion to vacate, set aside, or correct her sentence, and receive a new trial.  See Doc. No. 1-1.  She further requested an evidentiary hearing, and permission to depose trial counsel.  See id.  On the same day, she filed an assented-to motion to stay proceedings for 120 days, which I granted.  See Doc. No. 2.  The basis for Biron's motion was to allow her new counsel time to obtain complete trial discovery from the government, review the material, and provide that material to an independent investigator and a psychiatrist.  See id.  Biron, further requested freedom to supplement the record during pendency of the stay with any fruits of that investigation.

On June 10, 2016, I granted Biron's motion to extend the previous 120-stay by six months.  See Doc. No. 4.  On December 8, 2016, Biron filed a status report indicating that her counsel's independent investigation into the matter would be completed by the end of December 2016.  To date, Biron has not attempted to supplement the record.

## II.  STANDARD OF REVIEW

The Sixth Amendment guarantees only an "effective defense, not necessarily a perfect defense or a successful defense." Scarpa v. DuBois, 38 F.3d 1, 8 (1st Cir. 1994).  To succeed on a claim of ineffective assistance of counsel, a petitioner must

show both that "his attorney's performance was deficient under
an objective standard of reasonableness; and that his defense
suffered prejudice as a result." Rivera-Rivera v. United
States, 827 F.3d 184, 187 (1st Cir. 2016), cert denied, 137 S.
Ct. 696 (2017) (citing United States v. Carrigan, 724 F.3d 39,
44 (1st Cir. 2013), and Strickland v. Washington, 466 U.S. 668,
687-88 (1984)); see also Kimmelman v. Morrison, 477 U.S. 365,
382 (1986) (adopting the two-prong Strickland standard for
ineffective-assistance claims on habeas review).  To establish
prejudice, a petitioner must demonstrate a reasonable
probability "'that the result of the criminal proceeding would
have been different' if counsel had performed as the
[petitioner] asserts he should have." Rivera-Rivera, 827 F.3d
at 187 (quoting Hensley v. Roden, 755 F.3d 724, 736 (1st Cir.
2014)).  That probability, "must be substantial, not just
conceivable," Rivera-Rivera, 827 F.3d at 187, and it is
reasonable only to the extent that it is "sufficient to
undermine confidence in the outcome." Harrington v. Richter,
562 U.S. 86, 104, 112 (2011).  Furthermore, "[a] defendant's
failure to satisfy one prong of the Strickland analysis obviates
the need for a court to consider the remaining prong." Tevlin
v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010).  Thus, a reviewing
court is free to address either prong first. Carrigan, 724 F.3d
44; see Rivera-Rivera, 827 F.3d at 187.

### III.  **ANALYSIS**

Biron essentially makes two blended arguments in support of
her ineffective assistance of counsel claim.  First, Biron
argues that her trial counsel was constitutionally deficient in
failing to "investigate, or present, any mental health-related
evidence or defense."  See Doc. 1-1 at 12.  Second, Biron takes
her trial counsel to task for "rushing to trial" without
investigating any of the government's witnesses.  See Doc. 1-1 at
21.  I address and reject each argument in turn.  I then turn to
Biron's requests to depose trial counsel and for an evidentiary
hearing, both of which I deny.

### A.  **Failure to Investigate Mental Health Based Defense**

Biron's claim that Moir was ineffective in failing to
properly investigate a possible mental health based defense
fails because she cannot demonstrate that Biron was prejudiced
by counsel's allegedly deficient representation.

Although federal law recognizes that insanity can be an
affirmative defense to a federal prosecution, see 18 U.S.C. §
17, Biron has failed to point to virtually any evidence to
support her conclusory assertion that an insanity defense would
have been available to her had Moir pursued the issue prior to
trial.  The only objective evidence of any alleged mental
disease Biron offers is her post-conviction psychological

11

evaluation, which was prepared by Dr. Thomas Burns prior to
sentencing.  As the government correctly points out, however,
Dr. Burns did not find that Biron suffered from any kind of
psychological disorder that may have precluded her from being
able to make rational and informed calculations.  See Doc. No. 7
at 3; Trial Doc. No. 54 at 49, 3-22.  Dr. Burns' report
predominantly covered the personal crisis that Biron endured
when her husband abandoned her for the second time in 2011.  See
Doc. No. 1-1 at 17.  The period involved extraordinary stress,
financial difficulty, and a dramatic relapse into substance
abuse, which culminated during the period discussed above.  See
id.  Dr. Burns' report discussed this "collapse" rather
extensively, but he made no official diagnosis.  Because Biron
has offered no further information regarding her mental health,
despite having ample time to supplement the record, this first
argument fails.

Biron also argues that Moir's performance was
constitutionally deficient because he failed to present a
"diminished capacity defense."  See Doc. No. 1-1 at 12.  This
argument is doomed for similar reasons.  A defendant may only
offer psychiatric evidence of a mental-condition short of
insanity where the evidence is relevant to negate the requisite
criminal intent, and the defendant is charged with a specific-

intent crime.[5]  United States v. Brown, 326 F.3d 1143, 1147 (10th
Cir. 2003); see United States v. Ahrendt, 560 F.3d 69, 76 (1st
Cir. 2009); United States v. Schneider, 111 F.3d 197, 201 (1st
1997).  By contrast, when a defendant has been charged with a
general-intent crime, such evidence is generally inadmissible.[6]
Other courts have noted that even when dealing with specific-
intent crimes, "district courts must carefully scrutinize
proposed psychiatric evidence" to ensure that it is being
offered to negate intent rather than to justify or mitigate the
crime.  Brown, 326 F.3d at 1147.  This is due to the heightened
risk of confusing or misleading the jury that such evidence
presents.  See id. (citing Cameron, 907 F.2d at 1067).

---

[5] I use "specific intent" in accordance with its most common
usage, as "designat[ing] a special mental element which is
required above and beyond any mental state required with respect
to the *actus reus* of the crime," 1 Wayne R. LaFave, Subst. Crim.
L. § 5.2(e) (2d ed.), Westlaw (database updated Oct. 2016)
(citing Carter v. United States, 530 U.S. 255(2000)),
corresponding loosely with purpose." United States v. Bailey,
444 U.S. 394, 405 (1980).

[6] Although the First Circuit has never explicitly announced this
specific/general intent delineation, it has never rejected it,
and it is clearly the approach taken in the majority of federal
circuits.  See, e.g., United States v. Brown, 326 F.3d at 1147
n.2 (10th Cir. 2003); United States v. Cameron, 907 F.2d 1051
(11th Cir.1990); United States v. Pohlot, 827 F.2d 889, 897 n.4
(3d Cir.1987).  Moreover, it is a sound proposition of law,
because "general intent" only requires "proof of knowledge with
respect to the *actus reus* of the crime," Carter v. United
States, 530 U.S. 255, 269 (2000), a mental abnormality not
amounting to insanity could virtually never negate general
intent.  United States v. Bueno, No. 04-40023, 2006 WL 240060,
at *4 (D. Mass. Jan. 5, 2006) (citing Pohlot, 827 F.2d at 897
n.4).

Here, Count One was Biron's only crime of specific intent, so any psychological evidence regarding Biron's mental stability would have only been admissible if relevant to negate the intent required under §2423(a).[7]  See 18 U.S.C. § 2423(a) ("[K]nowingly transports [a minor] . . . with intent that the [minor] engage in . . . any [criminal sexual activity]").  Yet the only objective evidence offered by Biron, Dr. Burns' report, does nothing to negate the intent required by this statute.  Instead, it is only relevant for mitigation purposes, as a potential explanation or excuse for Biron's conduct.

Nothing in record suggests that Biron's mental condition during the pertinent timeframe could have precluded her from acting with the criminal purpose identified in § 2423(a).  Beyond Dr. Burn's psychiatric report, Biron offers nothing more than generalized, conclusory assertions.  Thus, she has failed to demonstrate that, had a psychiatric evaluation been arranged

---

[7] Biron's seven other crimes were general-intent crimes.  The portion of 18 U.S.C. § 2251(a) that served as the basis for Counts Two through Seven requires only that the defendant "knowingly" persuade, or otherwise induce or entice a minor to engage in sexually explicit conduct.  See United States v. Carroll, 105 F.3d 740, 743 (1st Cir. 1997).  In other words, the defendant need only have knowledge of the *actus reus*; no further proof of intent or purpose is required.  See id. at 744-45.  Moreover, 18 U.S.C. § 2252A(a)(5)(B), which served as the basis for Count Eight, requires only that the defendant "knowingly possess[] . . . an image of child pornography."  § 2252A(a)(5)(B).  Similarly, this requires only general knowledge of the act that constitutes the crime.

14

by Moir, there is a reasonable probability the results would
have been admissible at trial.  See Brown, 326 F.3d at 1147-48
(holding psychiatric evidence that defendant was "unable to make
'correct choices'" as inadmissible, because it did nothing to
negate specific intent); United States v. Kepreos, 759 F.2d 961,
964 (1st Cir. 1985) (holding psychiatric evidence as to a
defendant's "lack of awareness" as to the criminal character of
the fraudulent schemes for which he was charged inadmissible, as
it did nothing to negate specific intent and was misleading).

Thus, in a case such as this, the proper time to raise
diminished mental capacity was at sentencing and Moir did an
effective job in raising the issue at a time when it could
properly be considered.  Because Biron has failed to demonstrate
how psychiatric evidence could have been used at trial, she has
failed to prove that she was prejudiced by Moir's alleged
failure to properly investigate a possible diminished capacity
defense.

Finally, to the extent that Biron argues that her case was
"close," and that I should therefore apply a "comparatively
low[er]" measure of prejudice, I am unpersuaded.  See Doc. No. 8
at 6 (citing Dugas v. Coplan, 428 F.3d, 317, 336 (1st Cir.
2005)); Doc No. 1-1 at 29-30.  The evidence presented against
Biron at trial was overwhelming.  The jury's verdict was quickly
returned and her conviction is well supported by the record.

15

Thus, her case is a far cry from the arson conviction presented
in Dugas, which the appellate court aptly characterized as
"lay[ing] on a knife edge."  See Dugas, 428 F.3d at 336.

   In sum, Biron has failed to demonstrate a reasonable,
substantial probability that, had Moir investigated the
viability of an insanity or other mental-health based defense,
her trial would have resulted in a different outcome. See
Rivera-Rivera, 827 F.3d at 187.  Accordingly, her argument fails
because she cannot satisfy the prejudice prong of the Strickland
analysis.  See Rivera-Rivera, 827 F.3d at 187; Carrigan, 724
F.3d at 44

**B.    Further Investigate/ Rush to trial**

   Biron next argues that Attorney Moir's representation was
constitutionally deficient due to his failure to "investigate
any of the government's witnesses" or to conduct his own
independent investigation.  See Doc. No. 1-1 at 21.  It appears
that Biron attributes this failure in part to Moir's alleged
decision to "rush to trial."  See id.  Once again, this argument
fails because Biron cannot determine that she was prejudiced by
counsel's allegedly ineffective representation.  See Rivera-
Rivera, 827 F.3d at 187; Carrigan, 724 F.3d at 44

   Biron argues that Moir failed to investigate and interview
the government's so-called "specious" witnesses prior to trial
in order to obtain additional impeachment material or

exculpatory evidence.  <u>See</u> Doc. 1-1 at 20, 24.  According to
Biron, Kevin Watson and Brandon Ore were particularly
susceptible to impeachment, due to pending criminal proceedings
against them and unidentified, inconsistent statements they
purportedly made days before trial.  <u>See</u> Doc. 1-1 at 21-22.  She
attributes Moir's failure to investigate these matters to an
alleged strategic blunder of "rushing to trial" in order to
"catch the government off guard."  <u>See</u> Doc. 1-1 at 27, 29-30.
As a result, Biron argues, Moir was ill-equipped to favorably
develop the testimony of these witnesses and others on cross-
examination. <u>See</u> Doc. 1-1 at 24, 27.

        This claim finds no support in the record, which shows that
Moir effectively cross-examined Watson and Ore on many of the
points Biron now raises. <u>See</u> Trial Doc. No. 52 at 107, 6-25;
107, 15-25; 108, 1-9; 111, 8-22 (Kevin Watson); 175, 19-25
(Brandon Ore).  Moreover, Biron offers only the chronology of
her case to support her claim that Moir "rushed to trial," which
I find unpersuasive. <u>See</u> Doc. No. 1-1 at 26.

        But even assuming both claims to be true, Biron has offered
no showing of prejudice beyond vague and conclusory assertions,
such as: "[a]ny additional evidence . . . to further impeach
these witnesses . . .[or] to contradict these witnesses . . .
would have probably changed the outcome of this trial."  Doc.
No. 1-1 at 30.  She has utterly failed to identify what this

"additional evidence" may entail.  Nor does she identify any specific fact that Moir should have elicited on cross-examination of Watson or Ore, who she correctly identifies as having been "central" to the government's case.  See Doc. No. 1-1 at 27.  Such poorly supported arguments are simply insufficient to give rise to a reasonable probability that had Moir pursued an independent investigation into the government's witnesses, the outcome of Biron's trial would have been different.  Thus, I reject Biron's claim of ineffective assistance regarding Moir's alleged failure to investigate the government's witnesses and his alleged haste in going to trial.

**C.** **Requests for Evidentiary Hearing and Discovery**

    1.  Evidentiary Hearing

Biron also requests an evidentiary hearing.  See Doc. No. 1-1 at 31.  Because she has failed to meet her burden of establishing the need for a hearing, however, I deny her request.  A petitioner seeking relief under § 2255 "is not entitled to an evidentiary hearing as a matter of right."  David v. Unites States, 134 F.3d 470, 477 (1st Cir. 1998) (citing United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993)).  Rather, the petitioner bears the "fairly heavy" burden of establishing the need for a hearing.  McGill, 11F.3d at 225; see DeCologero v. Unites States, 802 F.3d 155, 167 (1st Cir. 2015).  Thus, a district court may deny § 2255 petition without an evidentiary hearing when "the movant's

18

allegations, even if true, do not entitle him to relief," or when
those allegations "need not be accepted as true because they state
conclusions instead of facts, contradict the record, or are
inherently incredible." DeCologero, 802 F.3d at 167 (internal
quotation marks omitted). Furthermore, when the judge tasked with
deciding a § 2255 motion is the same judge that presided over the
petitioner's underlying criminal case, "the judge is at liberty to
employ the knowledge gleaned during previous proceedings and make
findings based thereon without convening an additional hearing."
Id. (quoting McGill, 11 F.3d at 225).

Here, Biron has failed to demonstrate the need for an
evidentiary hearing. As I have explained, even assuming her
factual allegations to be true, Biron has been unable to
identify anything beyond conclusory assertions to substantiate
her claims. In light of the record before me, which includes
the specific, non-conclusory findings of Biron's examining
psychologist, there is no reason to believe that an evidentiary
hearing will uncover anything not previously available to Biron
at the time her § 2255 petition was prepared. Moreover, I
previously granted Biron permission to supplement the record in
this matter. Despite good-faith assurances that she would do
so, Biron has submitted no affidavits or additional mental-
health material challenging the accuracy of any information

19

presented at trial or sentencing.[8]  See Doc. No. 1-1 at 19 n.4,
22 n.5, 23 n.7.  Lastly, Biron has presented no issues that make
the existence of prejudice vel non uniquely difficult to
evaluate without an evidentiary hearing, e.g. the credibility of
an uncalled witness.  See Rivera Alicea v. United States, 404
F.3d 1, 3-4 (1st Cir. 2005); see also Kingsberry v. United
States, 202 F.3d 1030, 1032-33 (8th Cir. 2000)(holding that an
evidentiary hearing is only necessary where "the court is
presented with some reason to question the evidence's
credibility.").  Thus, an evidentiary hearing in this matter
would serve no "useful purpose," and I accordingly deny Biron's

---

[8] To the extent Biron's petition can be read to suggest that an
evidentiary hearing is necessary in order to obtain information
from certain government witnesses, who are now allegedly
unresponsive to undersigned counsel's investigative attempts, I
find her argument unavailing.  See Doc. No. 8 at 1-2.
Specifically, Biron has notified the court of the difficulty
encountered by her attempts to obtain
information from Kevin Watson, Brandon Ore, and Rob Hardy.  See
Doc. No. 8 at 1-2.  She contends that the futility of her own
investigation into those witnesses "further demonstrate[s] the
ineffective assistance of counsel argued in her original
petition."  See id.  Biron has provided no affidavit detailing
the circumstances of undersigned counsel's attempts to interview
these witnesses, however, nor has she been able to demonstrate
the need for such interviews.  Accordingly, these purported
investigative difficulties alone fail to demonstrate the need
for an evidentiary hearing.  See Porcaro v. United States, 832
F.2d 208, 211 (1st Cir. 1987) (concluding that § 2255 petitioner
failed to meet his burden of establishing the need for an
evidentiary hearing, where he offered no affidavits detailing
the circumstances of his efforts and inability to secure
supportive affidavits from potential witnesses, or their
expected testimony).

request.  See McGill, 11 F.3d at 226 ("That undisputed facts may
plausibly be interpreted in different ways does not entitle an
interested litigant to an evidentiary hearing.").

    2.   Request to Depose Counsel

    Biron also seeks permission to depose trial counsel.  See
Doc. No. 1-1 at 31.  Because she has failed to demonstrate a
showing of "good cause" so to warrant such discovery, I deny her
request.  Petitioners seeking relief under § 2255 are not
entitled to discovery as a matter of course.  See 28 U.S.C. §
2255, Pt. VI Ch. 153, R. Governing Sec. 2255 Proc. 6(a); Donald
v. Spencer, 656 F.3d 14, 15-16 (1st Cir. 2011) (discussing Rule
6(a) of the Rules Governing Section 2254 Proceedings, which is
substantively the same rule governing discovery in § 2255
cases).  Instead, Rule 6 of the Rules Governing Section 2255
Proceedings requires the requesting party to show "good cause"
and provide reasons for the request.  See R. Governing Sec. 2255
Proc. 6(a).  "Good cause" in this context requires "specific
allegations that give a court 'reason to believe that the
petitioner may, if the facts are fully developed, be able to
demonstrate that he is . . . entitled to relief.'"  Teti v.
Bender, 507 F.3d 50, 60 (1st Cir. 2007) (quoting Bracy v.
Gramley, 520 U.S. 899, 908-09 (1997)).

    Biron has made no such showing.  As I have explained, even
assuming that Attorney Moir's conduct was constitutionally

21

deficient under an objective standard of reasonableness, Biron
has failed to demonstrate that she suffered prejudice as a
result.  She has dually failed to demonstrate how deposing Moir
could possibly uncover the prejudice not now apparent.  Thus, I
cannot see how the discovery Biron seeks is capable of curing
her petition's deficiencies.  Accordingly, I deny her request to
depose trial counsel.  See Teti, 507 F.3d at 60.

#### IV.  CONCLUSION

For these reasons, I deny Biron's motion for relief under §
2255.  See Doc. No. 1-1.  Because Biron has failed to make a
substantial showing of the denial of a constitutional right, I
also decline to issue a certificate of appealability.  See 28
U.S.C. § 2253(c)(2); R. Governing Sec. 2255 Proc. 11; First Cir.
LR 22.0.  The clerk of court shall enter judgment accordingly
and close this case.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

October 2, 2017

cc:  Seth R. Aframe, Esq.
     Charles J. Keefe, Esq.